Charles J. Simon and Geraldine W. Simon v. Commissioner.
Simon v. Commissioner
Docket No. 77546.
United States Tax Court
T.C. Memo 1961-25; 1961 Tax Ct. Memo LEXIS 321; 20 T.C.M. (CCH) 112; T.C.M. (RIA) 61025; January 31, 1961
*321 Held, that an amount received by the petitioner upon the redemption of preferred stock constituted a taxable dividend under sections 301 and 302 of the Internal Revenue Code of 1954. Leo M. Rogers, Esq., 119 Ellison St., Paterson, N.J., for the petitioners. Robert S. Bevan, Esq., for the respondent. ATKINS
Memorandum Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the calendar year 1954 in the amount of $2,126.70. The deficiency resulted in part from the determination of the respondent that the petitioners were in receipt of a taxable dividend to the extent of $7,000 as a result of the redemption of preferred stock of Simon and Mills, Inc.
All the facts are stipulated and the stipulations are incorporated herein by this reference. The petitioners are husband and wife, residing on Long Island, New York. They filed a joint Federal income tax return for the calendar year 1954 with the district director of internal revenue at Brooklyn, New York. Since Geraldine W. Simon is a petitioner herein only as a result of having filed a joint return with her husband, Charles J. Simon will hereinafter be referred to as the petitioner. Simon and Mills, Inc., hereinafter *322 referred to as the corporation, is a firm engaged in the manufacture of molds, hand rails, aluminum, copper, and steel products. During the year 1954 its principal officers were the petitioner who was president and treasurer and his mother Minna D. Simon who was secretary, and during the year 1954 they were the only members of the board of directors. On December 1, 1954, the corporation had outstanding 432 shares of common stock of a par value of $100 per share which carried all the voting rights, and 70 shares of $100 par value 7% cumulative preferred stock. At that time the petitioner owned 252 shares of common stock and his mother owned the remaining 180 shares, and this continued to be their respective holdings of the common stock on December 31, 1954. At December 1, 1954, the 70 shares of preferred stock were owned by Minna D. Simon. By the latter part of December 1954, the corporation was in arrears on the payment of dividends on its 7% cumulative preferred stock in the amount of approximately $16,660. It had never paid any dividends on such stock, nor over the period from 1936 through 1956 had it ever paid any dividends on the common stock. During the early part of December *323 1954, Minna D. Simon made a gift of the 70 shares of 7% cumulative preferred stock of the corporation to the petitioner. During the latter part of December 1954, the petitioner presented the 70 shares of preferred stock to the corporation for redemption. It was so redeemed and the corporation distributed to the petitioner an amount of $7,000. The cash, current assets, capital stock, and surplus of the corporation as of the beginning and end of the year 1954, as shown by its balance sheets, were as follows: Jan. 1,
Dec. 31,
1954
1954
Cash
$ 18,586.00
$ 15,629.00
Current Assets
112,000.00
109,000.00
Capital Stock: Preferred
7,000.00
0
Common
43,200.00
43,200.00
Surplus
62,507.00
69,825.00 The following tabulation shows the net income or loss of the corporation for each of the years 1936 through 1956, inclusive, the surplus on hand at the beginning and end of each of those years, and the Federal taxes paid for each year: Net Income
Surplus on
Surplus on
Year
or (loss) *
Jan. 1
Dec. 31
Taxes Paid
1936
$ 4,909.51
$15,053.55
$19,187.96
$ 768.37
1937
3,236.14
19,187.96
21,887.90
536.20
1938
(2,873.48)
21,887.90
19,014.42
None
1939
(1,218.59)
19,014.42
17,795.83
None
1940
(4,644.19)
17,795.83
13,151.64
None
1941
(7,484.16)
13,151.64
5,667.48
None
1942
(5,672.24)
5,667.48
7,702.06
None
1943
(1,169.91)
7,702.06
6,532.15
None
1944
(1,983.66)
6,532.15
4,548.49
None
1945
(1,744.93)
4,548.49
556.46
None
1946
13,493.01
556.46
17,218.04
None
1947
949.23
17,218.04
18,699.65
1,197.65
1948
8,119.07
18,699.65
24,997.47
1,821.15
1949
(3,232.69)
24,997.47
20,918.48
1950
19,382.62
20,918.48
37,553.88
4,458.00
1951
23,867.60
37,553.88
54,560.25
6,861.23
1952
4,850.96
54,560.25
57,955.92
1,455.29
1953
6,501.65
57,955.92
62,507.07
1,950.50
1954
10,967.15
62,507.07
69,825.14
3,290.15
1955
8,015.46
69,825.14
75,435.96
2,404.64
1956
7,439.84
75,435.96
80,643.85
2,231.95
*324 In their joint income tax return for the calendar year 1954, the only income reported was salary to the petitioner from the corporation; no amount was included as income upon redemption of the preferred stock of the corporation. The respondent in the notice of deficiency determined that "pursuant to the provisions of Section 302(d) of the Internal Revenue Code of 1954, the redemption of preferred stock of Simon and Mills, Inc., in the amount of $7,000.00 is held to be a taxable dividend to which the provisions of Section 301 of the Internal Revenue Code of 1954 apply." Section 302(d) provides that if a corporation redeems its stock and if subsection (a) does not apply, the redemption shall be treated as a distribution of property to which section 301 applies, that is, it will be included in taxable income to the extent it constitutes a dividend as defined in section 316. Section 316 provides that every distribution is made out of earnings and profits to the extent thereof, and defines a dividend as any distributions out of earnings and profits accumulated after February 28, 1913, or out of earnings and profits of the taxable year. The remaining *325 parts of section 302 with which we are concerned are as follows: DISTRIBUTIONS IN REDEMPTION OF STOCK. (a) General Rule. - If a corporation redeems its stock (within the meaning of section 317(b), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock. (b) Redemptions Treated as Exchanges. - (1) Redemptions Not Equivalent to Dividends. - Subsection (a) shall apply if the redemption is not essentially equivalent to a dividend. (2) Substantially Disproportionate Redemption of Stock. - (A) In General. - Subsection (a) shall apply if the distribution is substantially disproportionate with respect to the shareholder. (B) Limitation. - This paragraph shall not apply unless immediately after the redemption the shareholder owns less than 50 percent of the total combined voting power of all classes of stock entitled to vote. (C) Definitions. - For purposes of this paragraph, the distribution is substantially disproportionate if - (i) the ratio which the voting stock of the corporation owned by the shareholder immediately after the redemption bears to all of the voting stock of the *326 corporation at such time, is less than 80 percent of - (ii) the ratio which the voting stock of the corporation owned by the shareholder immediately before the redemption bears to all of the voting stock of the corporation at such time. For purposes of this paragraph, no distribution shall be treated as substantially disproportionate unless the shareholder's ownership of the common stock of the corporation (whether voting or nonvoting) after and before redemption also meets the 80 percent requirement of the preceding sentence. For purposes of the preceding sentence, if there is more than one class of common stock, the determinations shall be made by reference to fair market value. * * *
(3) Termination of Shareholder's Interest. - Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder. * * *
(5) Application of Paragraphs. - In determining whether a redemption meets the requirements of paragraph (1), the fact that such redemption fails to meet the requirements of paragraph (2), (3), or (4) shall not be taken into account. * * * (c) Constructive Ownership of Stock. - (1) In General. - Except as provided in *327 paragraph (2) of this subsection, section 318(a) shall apply in determining the ownership of stock for purposes of this section. Section 318 provides in part as follows: CONSTRUCTIVE OWNERSHIP OF STOCK. (a) General Rule. - For purposes of those provisions of this subchapter to which the rules contained in this section are expressly made applicable. - (1) Members of Family. - (A) In General. - An individual shall be considered as owning the stock owned, directly or indirectly, by or for - * * *
(ii) his children, grandchildren, and parents. There is no question between the parties that the corporation did redeem the preferred stock within the meaning of the statute. Furthermore, under the provisions of section 318 the petitioner is to be considered as owning the stock which his mother owned. Thus, the petitioner must be considered as owning all the common stock of the corporation for purposes of the application of the statute. It follows then that the transaction does not come within the provisions of paragraphs 2 or 3 of subsection (b) of section 302 relating respectively to substantially disproportionate redemptions of stock and to termination of a shareholder's interest. Paragraph *328 4 of subsection (b) of section 302 is not pertinent here since it relates to railroad corporations. Thus, the question is narrowed to that of whether the redemption in the instant case was essentially equivalent to a dividend. If it was not, the transaction is to be considered, under section 302(b)(1) as an exchange; if it was it is to be treated, under section 302(d) as a distribution to which section 301 applies. The intention of Congress in enacting section 302(b)(1) is set forth as follows in the report of the Finance Committee with respect to the Internal Revenue Code of 1954, S. Rept. 1622, 83d Cong. 2d Sess., at pages 233 and 234: Subsection (b) of section 302 states three conditions in paragraphs (1), (2), (3), and (4), the satisfaction of any one of which will result in the treatment of the redemption as a distribution in full or part payment in exchange for the stock. In general, under this subsection your committee intends to incorporate into the bill existing law as to whether or not a reduction is essentially equivalent to a dividend under section 115(g)(1) of the 1939 Code, and in addition to provide three definite standards in order to provide certainty in specific *329 instances. * * *
The test intended to be incorporated in the interpretation of paragraph (1) is in general that currently employed under section 115(g)(1) of the 1939 Code. Your committee further intends that in applying this test for the future that the inquiry will be devoted solely to the question of whether or not the transaction by its nature may properly be characterized as a sale of stock by the redeeming shareholder to the corporation. * * * It is well established by judicial decisions under section 115(g) of the Internal Revenue Code of 1939 that whether a distribution by a corporation in cancellation or redemption of its stock is essentially equivalent to the distribution of a taxable dividend is a question of fact to be determined in the light of all the circumstances in a particular case; that it is the net effect of the distribution which is determinative; that in the determination no single factor is decisive; and that among the factors to be considered are whether there was a liquidation or contraction of the corporate business; whether the redemption served a corporate business purpose; whether the transaction resulted in any substantial change in the proportionate ownership *330 or control of the corporation; and the amounts, frequency, and significance of dividends paid in the past. Ferro v. Commissioner (C.A. 3), 242 F. 2d 838, affirming a Memorandum Opinion of this Court; Flanagan v. Helvering, (C.A.D.C.) 116 F. 2d 937, affirming a Memorandum Opinion of this Court; Earle v. Woodlaw, (C.A. 9) 245 F. 2d 119, certiorari denied 354 U.S. 942; United States v. Fewell, (C.A. 5) 255 F. 2d 496; E. H. Stolz, 30 T.C. 530, affd. per curiam (C.A. 5), 267 F. 2d 483; Genevra Heman, 32 T.C. 479; and Samuel H. Kessner, 26 T.C. 1046, affd. per curiam (C.A. 3), 248 F. 2d 943. And it has been held that a redemption may result in the distribution of a taxable dividend irrespective of whether or not it was originally issued as a stock dividend and irrespective of whether it was originally issued for a bona fide corporate purpose ( Kirschenbaum v. Commissioner, (C.A. 2) 155 F. 2d 23; E. H. Stolz, supra; and Samuel H. Kessner, supra) and irrespective of whether the stock redeemed is preferred stock ( E. H. Stolz, supra; Samuel H. Kessner, supra; and Genevra Heman, supra). Here the corporation had not, over the period from 1936 to 1956, paid any dividends upon *331 its common stock despite the fact that in many of those years it did have substantial earnings and despite the fact that its surplus mounted, by the end of 1954, to about $70,000. As above stated, the petitioner is to be considered, under the statute, as being the owner of all the common stock. After the distribution of $7,000 to him upon the redemption of the preferred stock, he remained, within the intendment of the statute, the sole owner of the corporation, as he was before. The corporation had earnings and profits available for the payment of a dividend far in excess of $7,000. Under these circumstances, the conclusion is inescapable that the net effect of the redemption was a payment of a dividend of $7,000 to the petitioner. Certainly this conclusion would have to be reached in the absence of a showing of other circumstances which would indicate it was not equivalent to a dividend. There is no evidence of any other such circumstances. On brief the petitioner makes a number of statements with respect to time and manner of issuance of the preferred stock in question, and states that the preferred stock was retired for the purpose of simplifying the capital structure, improving *332 its credit position, and avoiding any embarrassment in the event the preferred stock should fall into the hands of outside parties who might make a demand for the payment of dividend arrearages. Whether, if proven, any of these purported facts would, in the light of other considerations, be sufficient to sustain a conclusion that the redemption was not the equivalent of a dividend, we need not consider, since there is no evidence whatever in the record with respect thereto. The only facts shown are those contained in a stipulation of facts, as reflected hereinabove. Since the respondent determined that the amount received by the petitioner constituted a taxable dividend, the burden of proof was upon the petitioner to adduce proof to show error in such determination, including proof that the redemption was not essentially equivalent to a dividend. Samuel H. Kessner, supra.If any of the purported facts referred to by the petitioner in his brief were deemed material, or if there were any other facts affecting the issue, the burden was upon the petitioner to introduce proof with respect thereto. This he has not done. In view of the foregoing, we hold that the respondent did not err in *333 determining that the redemption should be treated as a distribution of property to which section 301 applies, and that such distribution constituted a taxable dividend in the amount of $7,000. Decision will be entered for the respondent. Footnotes
*. Net loss years designated by parentheses.↩