T.C. Memo. 1999-246


UNITED STATES TAX COURT


GAIL CARLETTE DIXON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8767-98.                      Filed July 28, 1999.


    <u>Held</u>: R's determination that P had unreported income from her sole proprietorship as an income tax preparer in the amounts of $87,000, $128,000, and $153,000 for the 1990, 1991, and 1992 taxable years, respectively, is sustained.

    <u>Held</u>, <u>further</u>, R's determination that P is liable for the additions to tax under secs. 6651(a)(1), I.R.C., and 6654(a), I.R.C., for the 1990, 1991, and 1992 taxable years is sustained.


Gail Carlette Dixon, pro se.

<u>Daniel J. Parent</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge: Respondent determined deficiencies and additions to tax for 1990, 1991, and 1992 with respect to petitioner's Federal income taxes as follows:

| | | Additions to Tax | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) |
| --- | --- | --- | --- |
| 1990 | $17,238 | $4,310 | $1,129 |
| 1991 | 33,970 | 8,493 | 1,941 |
| 1992 | 40,711 | 10,178 | 1,776 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

After concessions made by petitioner, the issues for decision are: (1) Whether petitioner had unreported gross receipts from her sole proprietorship, as determined by respondent, for her 1990, 1991, and 1992 taxable years; (2) whether petitioner is liable for the addition to tax under section 6651(a)(1) for the failure to file timely tax returns for the years in issue; and (3) whether petitioner is liable for the addition to tax under section 6654(a) for the failure to pay estimated income taxes for the years in issue.

FINDINGS OF FACT

At the time the petition was filed, petitioner resided in Sacramento, California.  Petitioner did not file income tax returns for her 1990, 1991, and 1992 taxable years and failed to make estimated tax payments during these years.

Respondent mailed the notice of deficiency on February 18, 1998, for petitioner's 1990, 1991, and 1992 taxable years.  Among other things, respondent made adjustments to petitioner's income by increases of $87,000 in 1990, $128,000 in 1991, and $153,000 in 1992.  This was done by reconstructing petitioner's income from available records.

During 1990, 1991, and 1992, petitioner operated a tax preparation business known as Dixon Tax Returns as a sole proprietorship.  Petitioner also provided notary and property management services.

Petitioner employed individuals to assist her in her business--an office manager and tax return preparers.  In the notice of deficiency, respondent allowed business expense deductions for wages paid to petitioner's employees in the amounts of $4,000, $10,000, and $16,000 for the 1990, 1991, and 1992 taxable years, respectively.

On April 10, 1992, the United States executed a search warrant of petitioner's business premises; approximately 60 boxes of records were seized.  The boxes included copies of

petitioner's business income receipt books (Rediform books), notary journal, and copies of client tax returns prepared by petitioner. The client tax returns prepared by Dixon Tax Returns included petitioner's name and identification number as the paid preparer. After the criminal proceedings and after being reviewed by respondent's revenue agent, John Donovan (Agent Donovan), the boxes were returned to petitioner.

In January 1996, petitioner was convicted of 14 counts of violating section 7206(2) for aiding and abetting the filing of false income tax returns. Petitioner was incarcerated at a Federal correctional institution in Dublin, California, for 18 months. As a condition of her supervised release from imprisonment, petitioner was ordered to file her 1990, 1991, and 1992 Federal income tax returns immediately.

Respondent's service center prepared a "Preparer Inventory Listing" (PIL) of returns which listed all tax returns prepared by petitioner in 1990 and 1991; a PIL was not available for 1992 because petitioner's records were unavailable. The PIL included sufficient information to determine whether a particular return prepared by petitioner was a Form 1040EZ, a Form 1040A (Short Form), or a Form 1040 (which included a Schedule A or Schedule C) (Long Form). The PIL also included the name and Social Security

number of the taxpayer, the type of form prepared, and the amount of tax owed. The PIL matched the actual copies of client tax returns which were seized from petitioner's business.

During 1990, petitioner prepared at least 1,640 Short Forms and at least 341 Long Forms. During 1991, petitioner prepared at least 2,191 Short Forms and at least 574 Long Forms, a 40-percent increase in returns prepared. During 1992, petitioner prepared more than 3,000 tax returns.

During 1990 and 1991, petitioner generally charged $35 for the preparation of a Short Form and $75 for a Long Form. During 1992, petitioner generally charged $37 for the preparation of a Short Form and $78 for a Long Form.

Petitioner's notary journal, which covers the period from December 22, 1989 to August 9, 1990,[1] includes the amount of the fees paid for petitioner's notary services. The notary fees from January 1 through June 30, 1990, totaled $2,119.

Petitioner's Rediform books were incomplete; they did not include records for all of the months of 1990, 1991, and 1992. Petitioner's Rediform books for 1990 include:

---

[1]It should be noted that the Stipulation of Facts states petitioner's notary journal covers the period from Dec. 22, 1989 to July 20, 1990; however, the actual notary journal covers the period from Dec. 22, 1989 to Aug. 9, 1990.

|        Date        |  Amount  |
|--------------------|----------|
| 1/2/90 to 2/2/90   | $12,567  |
| 2/2/90 to 2/17/90  |  15,858  |
| 2/24/90 to 3/14/90 |  15,687  |
| 3/14/90 to 4/7/90  |  16,733  |
| 4/7/90 to 5/4/90   |  16,782  |
|   Total            |  77,627  |

Petitioner's Rediform books for 1991 include:

|        Date         |  Amount  |
|---------------------|----------|
| 1/30/91 to 2/9/91   | $16,225  |
| 2/9/91 to 2/22/91   |  17,197  |
| 2/23/91 to 3/1/91   |   9,082  |
| 3/2/91 to 3/8/91    |   9,480  |
| 3/8/91 to 3/22/91   |  18,004  |
| 3/22/91 to 4/11/91  |  17,239  |
| 4/11/91 to 5/20/91  |  17,987  |
| 5/2/91 to 12/31/91  |  13,262  |
|   Total             | 118,476  |

Petitioner's Rediform books for 1992 include:

|        Date        | Amount |
|--------------------|--------|
| 1/1/92 to 1/6/92   |  $102  |
| 2/3/92 to 2/7/92   |  8,282 |
|   Total            |  8,384 |

Deposits into petitioner's bank accounts during January, February, March, April, and May of 1990, 1991, and 1992 are similar to the income and business activity shown in petitioner's Rediform books.

The receipts as shown in the Rediform books for 3 days in early February compare in each year as follows:

| Date         | 1990   | 1991    | 1992    |
|--------------|--------|---------|---------|
| February 4th | N/A    | $1,410  | $2,205  |
| February 5th | $1,450 | 2,915   | 2,420   |
| February 6th | 788    | 1,742   | 3,319   |
| February 7th | 1,530  | N/A     | N/A     |
|   Total      | 3,768  | 6,067   | 7,944   |
|              |        |         |         |
| Percentage increase | N/A | 61 percent | 31 percent |

Petitioner earned nearly all of her tax preparation income between January 1 and April 15 of each year.

During petitioner's criminal proceedings, petitioner and her attorneys were informed that they could examine her seized records or take them back at anytime.  Petitioner retrieved her records sometime in 1998 and placed them in storage in Sacramento, California.  Petitioner did not get the records out of storage until December 1998 when petitioner satisfied storage fees in arrears.

In 1989, petitioner lent Penisimani Lomu and Hakeai Faanunu $13,300 bearing 9 percent interest.  Petitioner was paid $1,097 and $399 in interest during 1990 and 1991, respectively.

During 1990, 1991, and 1992, petitioner paid to John Giovanzana $950, $10,497, and $7,588, respectively, in rent for business premises at 1923 University Avenue, East Palo Alto, California.  During 1990, petitioner paid Siri Brothers $26,096 in rent for business premises at 645 Donohoe Street, East Palo Alto, California; petitioner was evicted on April 15, 1990. Respondent has allowed a deduction for rent expense in the amounts of $27,046, $10,497, and $7,588, respectively, for petitioner's 1990, 1991, and 1992 taxable years.

OPINION

I.  Unreported Income

The first issue is whether petitioner had unreported gross receipts from her sole proprietorship, as determined by respondent, for her 1990, 1991, and 1992 taxable years. Respondent determined that petitioner had unreported gross income from her tax preparation and notary business of $87,000, $128,000, and $153,000 in 1990, 1991, and 1992, respectively. Petitioner did not file a trial memorandum or brief in this case. However, based on her testimony at trial, petitioner seems to assert that respondent's determination is arbitrary.

Respondent may use an indirect method to reconstruct a taxpayer's income where the taxpayer has failed to provide adequate records substantiating her income. See, e.g., Holland v. United States, 348 U.S. 121, 133 (1954). Respondent's method of income reconstruction is presumptively correct and will be affirmed as long as it is rational in light of all surrounding facts and circumstances. See Palmer v. IRS, 116 F.3d 1309, 1312 (9th Cir. 1997); Cracchiola v. Commissioner, 643 F.2d 1383, 1385 (9th Cir. 1981), affg. per curiam T.C. Memo. 1979-3. Petitioner bears the burden of proving that respondent's method of income reconstruction is unreasonable. See Palmer v. IRS, supra at 1312.

Courts have approved methods of reconstruction which project or extrapolate the taxpayer's income from a limited amount of information.  See, e.g., Bradford v. Commissioner, 796 F.2d 303, 306-307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Adamson v. Commissioner, 745 F.2d 541, 548 (9th Cir. 1984), affg. T.C. Memo. 1982-371.  In this case, the only records available to reconstruct petitioner's tax preparation and notary income were petitioner's Rediform books, notary journal, and copies of client tax returns prepared by petitioner.

Agent Donovan determined that petitioner had $83,000 and $122,000 in unreported income from her tax preparation business for her 1990 and 1991 taxable years, respectively.  This amount was derived by first multiplying the number of Short and Long Forms disclosed by the 1990 PIL by the appropriate charge disclosed by the Rediform books, which totaled $82,975 and $119,735 (PIL Totals) for petitioner's 1990 and 1991 taxable years, respectively.  Agent Donovan then totaled the gross receipts shown in the Rediform books (Rediform Totals) in the amount of $77,627.  For the 1990 taxable year, Agent Donovan compared the PIL total of $82,975 to the Rediform total of $77,627 and determined that tax return preparation income was $83,000.  For the 1991 taxable year, Agent Donovan compared the PIL total of $119,735 to the Rediform total of $118,476 and determined that tax return preparation income was $122,000.

For petitioner's 1992 taxable year, respondent determined that petitioner had $146,000 of unreported tax preparation income. A PIL for petitioner's 1992 taxable year was unavailable. However, the record indicates that petitioner prepared at least 3,000 returns in 1992. Agent Donovan testified that $146,000 was a result of increasing his figure of $122,000 of unreported tax preparation income from 1991 by 20 percent, yielding $146,600, rounded down to $146,000. Agent Donovan derived the factor of 20 percent by using the 31 percent increase in the comparative 3 days of receipts for the month of February in 1990, 1991, and 1992 and reducing the percentage to 20 percent to account for the fact that petitioner's tax preparation business ceased on April 10, 1992.

Under these circumstances, we conclude that respondent's method of reconstructing petitioner's 1990, 1991, and 1992 tax return preparation income is reasonable. Therefore, respondent's determination that petitioner had unreported tax preparation income of $83,000, $122,000, and $146,000 for 1990, 1991, and 1992, respectively, is sustained.

Respondent also determined that petitioner had unreported notary income of $4,000, $6,000, and $7,000 in 1990, 1991, and 1992, respectively. Petitioner's notary journal, which covers the period from December 22, 1989 to August 9, 1990, includes the

amount of the fees paid for petitioner's notary services.  The notary fees from January 1 through June 30, 1990, totaled $2,119.

To determine petitioner's notary income for her 1990 taxable year, Agent Donovan multiplied the $2,119 of notary income, as disclosed in the notary journal, by two, resulting in $4,238, and then rounded down to $4,000.  To determine notary income for petitioner's 1991 taxable year, Agent Donovan increased $4,238 ($2,119 multiplied by two) by 40 percent (based upon the 40-percent increase in the number of returns prepared from 1990 and 1991, and the imputed 61-percent tax return preparation revenue growth from 1990 to 1991), resulting in $5,933, and rounded up to $6,000.  Agent Donovan determined that petitioner's notary income increased by 20 percent in 1992, resulting in $7,120, rounded down to $7,000.  Agent Donovan derived the multiplication factor of 20 percent by using the 31-percent increase in the comparative 3 days of receipts for the month of February in 1990, 1991, and 1992 and reducing the percentage to 20 percent to account for the fact that petitioner's tax preparation business ceased on April 10, 1992.

We uphold respondent's method of reconstructing petitioner's notary income because it is rational in light of all surrounding facts and circumstances.  See Palmer v. IRS, 116 F.3d at 1312.

Therefore, respondent's determination that petitioner had unreported notary income of $4,000, $6,000, and $7,000 for 1990, 1991, and 1992, respectively, is sustained.

Based on the foregoing, we sustain respondent's determination that petitioner had unreported income from her sole proprietorship in the amounts of $87,000, $128,000, and $153,000 for the 1990, 1991, and 1992 taxable years, respectively.

II.  Addition to Tax Under Sec. 6651(a)(1)

Respondent determined additions to tax for failure to file timely tax returns under section 6651(a)(1) in the amounts of $4,310, $8,493, and $10,178 for 1990, 1991, and 1992, respectively.  Section 6651(a)(1) provides for an addition to tax of 5 percent per month for each month or part of a month for which a return is late, the aggregate not to exceed 25 percent. A taxpayer has a nondelegable duty to file a timely return but can avoid the addition to tax for failing to do so by affirmatively showing that the delinquency was due to reasonable cause and not due to willful neglect.  See sec. 6651(a).  The taxpayer bears the burden of proving both (1) that the failure did not result from willful neglect, and (2) that the failure was due to reasonable cause.  See United States v. Boyle, 469 U.S. 241, 245 (1985).  If the taxpayer does not meet this twin burden,

the imposition of the addition to tax is mandatory.  See <u>Heman v.</u>
<u>Commissioner</u>, 32 T.C. 479 (1959), affd. 283 F.2d 227 (8th Cir.
1960).

Petitioner has failed to file her 1990, 1991, and 1992
income tax returns.  Petitioner testified that she was too
distraught over her husband's death on October 15, 1990, to file
her 1990 tax return.  She further testified that she was under a
lot of stress, was under a physician's medical care, and was
taking a lot of medication.  In light of the fact that petitioner
prepared 2,765 client returns in 1991, we conclude that
petitioner's failure to file her 1990 income tax return was not
due to reasonable cause, and therefore the addition to tax is
properly imposed.

Petitioner's 1991 and 1992 income tax returns were due on
April 15, 1992 and 1993, respectively.  By her testimony,
petitioner seeks to imply that she was unable to file her 1991
and 1992 income returns on time because the IRS had her business
records.  The record shows that the United States executed a
search warrant of petitioner's business premises on April 10,
1992, where approximately 60 boxes of records were seized.
However, during petitioner's criminal proceedings, petitioner and
her attorneys were informed that they could examine her seized
records or take them back at anytime.  Thus, petitioner had ample
opportunity to access her business records.  Moreover, even after

petitioner retrieved her records in 1998, she failed to file her income tax returns.  The fact that petitioner has not filed her returns even with full access to her records indicates a lack of causal relationship between petitioner's failure to file and the IRS's seizure of her business records.

Under these circumstances, we conclude that petitioner's failure to file her 1991 and 1992 income tax returns was not due to reasonable cause, and therefore the addition to tax is properly imposed.

III. Addition to Tax Under Sec. 6654(a)

Respondent determined additions to tax for 1990 under section 6654(a) for underpayment of estimated Federal income tax. This addition to tax is mandatory absent a showing by petitioner that one of the several statutorily provided exceptions applies. See Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980). Petitioner has made no such showing.  Respondent's determination is therefore sustained.

To reflect the foregoing,

Decision will be

entered for respondent.