CALVIN L. AND SUSAN E. BRINTS, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Brints v. Commissioner
Docket Nos. 1140-88; 1141-88; 1142-88
United States Tax Court
T.C. Memo 1989-457; 1989 Tax Ct. Memo LEXIS 457; 57 T.C.M. (CCH) 1405; T.C.M. (RIA) 89457; August 28, 1989
*457 Gary A. Ward, for the petitioners. James F. Prothro and Gary A. Benford, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined the following deficiencies against petitioners: Petitioners
Docket No.
Year
Deficiency
Calvin L. and
Susan E. Brints
1140-88
1981
$ 61,733.47
1982
1,384.53
Woodrow W. and
Stella F. Brints
1141-88
1978
$    740.00
1979
887.00
1980
235.00
1981
1,302.00
George O. and
Catherine Elle
1142-88
1981
$  2,034.00
After concessions, the issues for decision are: (1) whether petitioners are entitled to the pass-through of 1981 losses and investment tax credits from an entity known as "Texas Knitting Company." Resolution of this issue turns on whether a knitting mill venture in which petitioners invested was operating as a partnership or as a corporation during 1981; (2) whether any tax deficiency determined against Calvin and Susan Brints was discharged in prior personal bankruptcy proceedings; and (3) whether the doctrines of estoppel or waiver bar respondent from assessing and collecting any deficiency determined *458 against petitioners. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners in each docket are husband and wife who joined in joint income tax returns during each of the years in issue. Woodrow and Stella Brints are the parents of Calvin Brints. George and Catherine Elle are the parents of Susan Brints. All were residents of Lubbock, Texas, at the time the petitions herein were filed. Petitioners were investors in a knitting mill for the manufacture of athletic socks. Calvin Brints was the primary investor in the knitting mill operation having invested approximately $ 100,000 during 1981. Calvin also personally purchased the five knitting machines which were the principal assets of the operation. Business was commenced in January 1981, in a storefront in Crosbyton, Texas. Significant production and sales activity were not realized until the fourth quarter of 1981. Once full scale operations had begun, the operation was moved to more spacious quarters in December 1981. Texas Knitting, Inc. received its corporate charter from the State of *459 Texas on February 23, 1981, and was in good standing as a Texas corporation as of November 10, 1988. Calvin Brints was named as an initial director in the Articles of Incorporation along with David Brotherton, James Parker, and Danny Bradford. The corporation had an authorized capital of 100,000 shares, $ 100 par value common stock. An organizational meeting of the Board of Directors of the corporation was held on March 1, 1982. At the meeting, by-laws were adopted and the issuance of 1,751 shares of the common stock was authorized. Also Calvin Brints was appointed secretary/treasurer and chairman of the board and Woodrow Brints was named vice-president. Company records of Texas Knitting, Inc. include a lease agreement between "Texas Knitting, Inc., a Texas corporation" and the city of Crosbyton. The Automobile and Comprehensive Liability Insurance Declaration dated May 21, 1981, with United States Fire Insurance Company reflected that Texas Knitting, Inc. was a corporation. Sales invoices of the company were styled under the name of Texas Knitting, Inc. Supplies were purchased in 1981 in the name of Texas Knitting, Inc. A checking account was opened in the name of Texas *460 Knitting, Inc. sometime in the first half of 1981. A Texas Sales and Use Tax Return was also filed in the name of Texas Knitting, Inc. for the Quarter ended December 31, 1981. An initial Form 1120, U.S. Corporation Income Tax Return was filed in the name of Texas Knitting, Inc. for its fiscal year ended November 30, 1981. No activity was indicated on the corporate return for this period. Company records also include check stubs dated March 31, 1981, denoting a deposit of $ 2,500 for "Bradford stock" and June 3, 1981, denoting a deposit of $ 4,000 for "David's stock." During 1981, Forms 941, Employer's Quarterly Federal Tax Returns, were filed on behalf of Texas Knitting, Inc. and deposits of FICA taxes and income tax withheld were made in its name. However, on or about April 12, 1982, authorized representatives of Texas Knitting, Inc. filed revised Forms 941C and claims for refund of the tax previously remitted. An explanatory note accompanying the revised filing indicated that the initial returns were erroneous since Texas Knitting, Inc. "had not been activated" and that the knitting operation had been conducted as a partnership in 1981. Also on or about April 12, 1982, a *461 Form 940 Employer's Annual Unemployment Tax Return and Forms 941 were filed and tax payments made on behalf of "Texas Knitting Company" which petitioners allege is the partnership through which the knitting operation was run until December 1981. A Form 1065, U.S. Partnership Return of Income was also filed in the name of Texas Knitting Company for its taxable year ended December 31, 1981. It is the losses and investment credits from this return which petitioners claimed as "partners" of Texas Knitting Company and which form the basis for the deficiencies determined herein. Respondent subsequently issued refunds to Texas Knitting, Inc. of the amounts it had remitted and reported on the Forms 941 it had initially filed plus accrued interest. Thereafter, respondent determined as the result of a subsequent audit that Texas Knitting, Inc. and not Texas Knitting Company was in fact the entity liable for the taxes due from the knitting operation and that the refund to Texas Knitting, Inc. had been erroneous. Texas Knitting, Inc. filed a petition for protection under Chapter 11 of the U.S. Bankruptcy Code on June 1, 1983. The bankruptcy of Texas Knitting, Inc. was precipitated by the *462 bankruptcy of Brints Cotton Marketing, Inc., ("Marketing") a cotton brokerage business owned and operated by Calvin Brints. The trustee in bankruptcy of Marketing had made known his intention to call certain demand loans which had been made by Marketing to Texas Knitting, Inc. Texas Knitting, Inc. did not have the assets to meet such a demand and thus sought protection itself under the bankruptcy laws. Respondent filed a proof of claim in the bankruptcy of Texas Knitting, Inc. in the amount of $ 17,172.17 and an administrative claim for $ 99.22. Both claims were attributable to the refund made to Texas Knitting, Inc. plus accrued interest. Respondent received $ 6,706.13 as a settlement of these claims. On October 5, 1984, Calvin and Susan Brints filed for personal bankruptcy under Chapter 7 of the Bankruptcy Code. Calvin Brints listed respondent as a creditor for a disputed and unliquidated debt of $ 61,993.00 in the petition in bankruptcy. However, respondent filed a claim in Bankruptcy Court for 1981 taxes of only $ 209.98. This claim was later amended to approximately $ 109,000. However, respondent withdrew his claim. A claim was resubmitted by respondent when the personal *463 bankruptcy proceeding was converted from Chapter 7 of the Bankruptcy Code to Chapter 11. However, this claim was also withdrawn. The Bankruptcy Court determined that Calvin and Susan Brints owed $ 209.98 in 1981 taxes and such amount was paid. In notices of deficiency, respondent determined that the knitting venture had been operated as a corporation rather than as a partnership as alleged by petitioners. He thus disallowed the pass-through of losses and investment credits from the knitting venture which had been claimed by petitioners on their personal returns. OPINION The first issue we must decide is whether the knitting operation in which petitioners invested was operated as a corporation (Texas Knitting, Inc.) or as a partnership (Texas Knitting Company) during the period in which the losses and investment credits reflected on petitioners' returns were generated. Petitioners bear the burden of proof. Rule 142(a); [2]Welch v. Helvering, 290 U.S. 111, 115 (1933). *464 Petitioners contend that the business was operated as a partnership through December 1981 during which period they refer to the knitting operation as "an experimental pilot program." Petitioners assert that it was only in December 1981, when they became convinced of the pilot program's feasibility, that the corporation was activated. However, petitioners acknowledge that Texas Knitting, Inc. came into existence on February 23, 1981, when it received its charter from the State of Texas. Once a taxpayer has complied with state law governing the creation of a corporation, a separate entity comes into being for tax purposes so long as its creation is followed by business activity other than tax avoidance. Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943). The quantum of business activity required for recognition of a corporation is minimal. Britt v. United States, 431 F.2d 227, 237 (5th Cir. 1970). We find that petitioners have failed to meet their burden of establishing that Texas Knitting, Inc. engaged in no business activity prior to December *465 1981. Their contention that any business conducted prior to this time was through the partnership "Texas Knitting Company" is based almost exclusively on the uncorroborated testimony of Calvin Brints. No evidence was presented as to the terms of this alleged partnership. None of the other "partners" were called to corroborate Calvin Brints' testimony. We may interpret the failure to call readily accessible witnesses as an indication that their testimony would have been unfavorable to petitioners. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Texas Knitting, Inc. had its own bank account, contracted in its own name, and held itself out to third parties as a corporation. There is no evidence that these actions only occurred in December and thereafter as alleged by petitioners. The failure of Texas Knitting, Inc. to issue stock, hold board meetings, elect officers, or observe any other corporate formalities until a later date does not effect its status as a corporation for tax purposes. See *466 Skarda v. Commissioner, 27 T.C. 137, 144-147 (1956); Giant Auto Parts, Inc. v. Commissioner, 13 T.C. 307, 317 (1949). Petitioners' reliance on Blue Flame Gas Co. v. Commissioner, 54 T.C. 584 (1970), and Bystry v. United States, 596 F. Supp. 574 (W.D. Wis. 1984), is misplaced. In Blue Flame, the taxpayers intended to incorporate an existing lumber business then being operated as a partnership. However, due to disagreements among themselves, the partners never transferred their business and personal assets to the corporation or began the conduct of business within the corporate framework. The distinguishing factor between Blue Flame and the instant case is that in the former there was an existing partnership which conducted business in much the same manner both before and after creation of the corporation. In contrast, petitioners here have not established the existence of a partnership prior to commencement of the knitting operation and the incorporation of Texas Knitting, Inc. Having chosen at the outset to incorporate the knitting operation, petitioners must live with the tax consequence of that *467 choice. Strong v. Commissioner, 66 T.C. 12, 26 (1976). Similarly, Bystry is distinguishable. The taxpayers in that case created a corporation with the intention of conducting a dairy farming business through it. However, the taxpayers failed to conduct the business within the sphere of the corporation. No assets were ever transferred to the corporation. A corporate bank account was not established. Creditors' billings were made out to each taxpayer individually and not to the corporation. In short, the taxpayer in Bystry presented much more evidence that the corporation was a mere shell which engaged in no activity than has been presented by petitioners herein. Petitioners having failed to meet their burden of proving that their knitting venture was not operated as a corporation, respondent's disallowance of losses and investment credits generated from that activity is sustained. The next issue for decision is whether the tax deficiency of Calvin and Susan Brints was discharged by the U.S. Bankruptcy Court and thus barred from collection by respondent. This allegation was made by petitioners Calvin and Susan Brints in their first amended petition *468 and by their attorney in his opening statement at trial. However, no further mention of this issue was made at trial or on brief. It therefore appears likely that petitioners have abandoned this issue. Nevertheless we note that this Court lacks subject matter jurisdiction to decide whether petitioners' deficiencies in tax were discharged in the bankruptcy proceeding. [3]Graham v. Commissioner, 75 T.C. 389, 399 (1980). The final issue to be addressed is whether respondent is barred by waiver or estoppel from assessing and collecting a deficiency *469 against petitioners. Petitioners cite no authority in support of their position which they appear to justify on two different grounds. First, petitioners argue that by his action in refunding the employment taxes paid by Texas Knitting, Inc. and accepting the revised quarterly tax returns, respondent is now estopped from denying that the sock knitting venture was operated as a partnership during 1981. Petitioners' contention is without merit. It is a well established principle that equitable estoppel is not a bar to correction by respondent of a mistake of law. Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183 (1957). Secondly, petitioners argue that respondent is estopped from assessing and collecting any deficiency against Calvin and Susan Brints as a result of his conduct arising out of the Brints' personal bankruptcy proceedings. Petitioners allude to the existence of a conspiracy between respondent and the trustee in bankruptcy to deny Calvin Brints the right to have his homestead protected under the Bankruptcy Code by not filing a tax claim in the *470 bankruptcy proceeding. Petitioners have failed to prove the existence of any conspiracy or any other untoward conduct on the part of respondent. Filing of a tax claim against a bankrupt estate by respondent is not mandatory. Failure to do so means only that he cannot share in the estate to satisfy his claims. He is free to proceed against any other assets of the taxpayer which may be available outside the bankruptcy estate. Newberg v. United States, 187 F. Supp. 158, 159-160 (S.D.N.Y. 1960), affd. 296 F.2d 152 (2d Cir. 1961). Respondent is thus not estopped from assessing and collecting the deficiencies in issue against petitioners. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Cases of the following petitioners are consolidated herewith: Woodrow W. and Stella F. Brints, docket No. 1141-88; George O. and Catherine Elle, docket No. 1142-88.↩
2. All statutory references are to the Internal Revenue Code, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
3. We also note that it is quite likely that the tax liabilities at issue herein were not discharged in the bankruptcy proceeding. 11 U.S.C. sec. 523(a)(1)(A) (1982)↩ excepts from discharge a tax of a kind specified in sec. 507(a)(7). Sec. 507(a)(7)(4)(i) includes income taxes for a taxable year the last due date for which, including extensions, is within three years of the filing of the petition in bankruptcy. Calvin and Susan Brints filed their petition on October 5, 1984. The due dates for returns in the tax years at issue were within three years of the filing of the petition in bankruptcy.