T.C. Memo. 2000-308

UNITED STATES TAX COURT

CHARLES A. MCGEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 9302-97, 5434-98.     Filed September 28, 2000.

Charles A. McGee, pro se.

<u>Marshall R. Jones</u> and <u>Shuford A. Tucker, Jr.</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  In notices of deficiency addressed to petitioner, respondent determined deficiencies in and additions to Federal income tax as follows:[1]

---

[1] Respondent seeks additions to tax in amounts greater than those set forth in the notices of deficiency under sec. 6214(a).

In Docket No. 9302-97:

| Year | Deficiency | Additions to Tax | | | Accuracy-related Penalties | |
| | | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6653(b)(1) | Sec. 6663 | Sec. 6662(a) |
|------|-----------|---------|---------|---------|---------|---------|
| 1988 | $146,963 | $10,062 | $2,743 | $75,364 | --- | --- |
| 1989 | 39,772 | 9,943 | --- | --- | $20,069 | $2,208 |
| 1990 | 224,046 | 56,011 | --- | --- | 91,597 | 20,383 |

In Docket No. 5434-98:

| | | Additions to Tax | | | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) |
|------|-----------|---------|---------|---------|---------|---------|
| 1987 | $334,292 | $11,533 | $2,660 | [1] | $210,818 | [2] |

[1] 50% of the interest due on the portion of the underpayment attributable to negligence.

[2] 50% of the interest due on the portion of the underpayment attributable to fraud.

After concessions,[2] the issues for our consideration are: (1) Whether petitioner's 1987, 1988, and 1989 income tax returns are valid returns of petitioner; (2) whether petitioner is liable for increased deficiencies under section 6214(a)[3] for his 1987, 1988, and 1989 tax years; (3) whether petitioner's Schedule C, Profit or Loss From Business, income was understated for the 1987, 1988, 1989, and 1990 tax years; (4) whether petitioner

---

[2] Respondent has conceded that petitioner is entitled to the itemized deductions claimed on Schedule A, Itemized Deductions, of petitioner's 1990 tax return. Respondent has also proposed to increase the deductions for wages on petitioner's Schedules C. The parties have also stipulated that petitioner incurred a capital loss of $9,844 on the sale of stock during 1990.

[3] Unless otherwise indicated, all section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

failed to report interest income for the 1987, 1988, 1989, and 1990 tax years; (5) whether petitioner is entitled to claim losses for the 1987, 1988, 1989, and 1990 tax years attributable to farming activities and for the 1990 tax year attributable to "harness racing"; (6) whether petitioner failed to report capital gain income for his 1988, 1989, and 1990 tax years; (7) whether 1990 gains and losses of McGee Landscaping are reportable on petitioner's 1990 individual income tax return; (8) whether petitioner is liable for the failure to file addition and or the negligence penalty for the 1987, 1988, and 1990 tax years; (9) whether petitioner is liable for the civil fraud penalty for the 1987, 1988, and 1990 tax years; (10) whether petitioner is liable for fraudulently failing to file a tax return for the 1989 tax year;[4] (11) whether the period for assessment has expired with respect to the tax years under consideration; and (12) whether the doctrine of double jeopardy, res judicata, or collateral estoppel bars assessment for any of the years at issue.

---

[4] Pursuant to sec. 6664(b), the penalties for fraud under sec. 6663 and for negligence under sec. 6662 as determined in the notice of deficiency do not apply for 1989 because petitioner filed no return for that year. Rather the issue is whether the penalty under sec. 6651(f) for fraudulent failure to file is applicable for 1989. In the other years for which respondent has determined penalties for both fraud and negligence, the determinations are not duplicative because the determinations are with respect to separate portions of the deficiencies in each year. For example, the fraud penalty is determined for unreported Schedule C income, and the negligence penalty is determined for Schedule F, Profit or Loss From Farming, losses.

FINDINGS OF FACT[5]

When his petitions were filed, petitioner Charles A. McGee resided in Alabama.  At all pertinent times petitioner was a self-employed attorney authorized to practice law in Alabama. Petitioner received Bachelor of Arts and Juris Doctor degrees from the University of Alabama in 1972 and 1975, respectively. Petitioner's law school work included a course in Federal income taxation.

During 1987, 1988, 1989, and 1990, petitioner was married to Karen McGee.  From 1981 through 1990, petitioner filed only two Federal individual income tax returns:  A joint 1980 income tax return with Karen McGee, filed on March 18, 1983, and a joint 1986 income tax return with Karen McGee, filed on October 15, 1987.

Petitioner's Tax Returns

On November 27, 1990, respondent notified petitioner's representative of the initiation of an examination of petitioner's 1981, 1982, 1983, 1984, 1985, 1987, and 1988 tax years.  The scope of the audit was later broadened to include the 1989 and 1990 tax years.  On February 12, 1991, respondent received documents purporting to be petitioner's Federal income tax returns for the 1981, 1982, 1983, 1984, 1985, 1987, 1988, and

---

[5] The stipulation of facts and the attached exhibits are incorporated by this reference.

1989 tax years. Respondent received petitioner's 1990 Federal income tax return on June 26, 1992.

These documents were all prepared by Harold E. Grierson (Grierson). Grierson asked petitioner to furnish him with information and records concerning all of petitioner's income for 1987, 1988, 1989, and 1990. Petitioner provided Grierson with filled-out Federal tax forms (prior-year forms with the preprinted years crossed out), and Grierson copied the amounts that petitioner had entered on these forms in preparing the documents. Petitioner did not provide Grierson with any supporting documentation for the amounts shown on the filled-out tax forms he gave to Grierson. Grierson did not verify the figures and computations on the filled-out forms but instead reviewed them only for internal consistency or placement on the form.

Petitioner did not sign the documents purporting to be his 1987, 1988, and 1989 individual Federal income tax returns. Instead, petitioner's employee, Merle Wilson (Wilson), signed petitioner's name on the documents. Wilson routinely handled banking transactions for petitioner, including the signing of his checks and the endorsement of his deposits. Wilson had never signed petitioner's tax returns before signing the 1987, 1988, and 1989 tax returns. Petitioner and Wilson did not discuss Wilson's signing the documents prior to her doing so, and petitioner did not authorize Wilson to sign them.

Petitioner's Criminal Tax Proceedings

On November 27, 1996, petitioner was indicted in Federal District Court for the Northern District of Alabama for one count of willfully making and subscribing to an individual Federal income tax return which he did not believe to be true and correct. On March 3, 1997, petitioner's criminal trial began, and on March 7, 1997, the jury returned a guilty verdict. On April 8, 1997, petitioner filed a Motion for New Trial, which was granted on May 8, 1997. On July 14, 1997, petitioner's second criminal trial began, and on July 21, 1997, the jury returned a verdict of not guilty.

McGee Landscaping, Inc.

McGee Landscaping, Inc. (McGee Landscaping), was incorporated in DeKalb County, Alabama, on March 27, 1986. No election under section 1362 was filed with respect to McGee Landscaping. During the years at issue, petitioner was the sole owner of McGee Landscaping. On his financial statement dated July 27, 1989, petitioner represented himself as the president and the owner of the stock of McGee Landscaping. On his financial statement dated July 31, 1989, petitioner represented his ownership of McGee Landscaping as the ownership of "Securities & Investments". McGee Landscaping had three separate bank accounts.

Petitioner's Bank Accounts

During the years at issue, petitioner maintained a clients' trust account, numbered 055-0086-9 (Trust Account 1), at First State Bank of DeKalb County (First State) in connection with his law practice. During the years at issue, petitioner maintained a clients' trust account, number 035-3980-6 (Trust Account 2), at Central Bank (now known as Compass Bank) in connection with his law practice. During the years at issue, petitioner maintained a business checking account, numbered 055-0374-4 (the Business Account), at First State in connection with his law practice. During 1987, 1988, and 1989, petitioner maintained a checking account, numbered 056-0531-8 (the Personal Account), at First State. During 1989 and 1990, a checking account, numbered 055-0820-7, was maintained in connection with the business of McGee Landscaping (the McGee Landscaping Account), at First State.

1987 Deposits

On April 22, 1987, the law firm of Hare, Wynn, Newell and Newton issued check number 1295 payable to petitioner in the amount of $305,270 as a referral fee. On May 7th or 8th, 1987, $233,210 of the proceeds from check number 1295 was deposited into the Personal Account by Wilson, $2,500 of the proceeds was received in cash by Wilson, and $69,560 of the proceeds was used by Wilson to purchase a cashier's check payable to the Tennessee Valley Authority. This cashier's check was not delivered to the payee but instead was deposited into the Personal Account on

August 3, 1987. Petitioner did not report the proceeds of check number 1295 on his 1987 tax return.

On August 28, 1987, the DeKalb County, Alabama Circuit Clerk issued check number 1883 payable to petitioner in the amount of $50,000 as a fee earned in connection with the settlement of a case. On November 10, 1987, check number 1883 was deposited by Wilson into petitioner's Personal Account. Petitioner did not report the proceeds of check number 1883 on his 1987 tax return.

On August 28, 1987, the Alabama Circuit Clerk issued check number 1886 payable to petitioner in the amount of $278,982 as a fee earned in connection with the settlement of a case. Wilson endorsed petitioner's name to check number 1886 and gave it to petitioner's mother. Petitioner did not report the proceeds of check number 1886 on his 1987 tax return.

During 1987, unexplained deposits of $95,855 were made to petitioner's bank accounts and were not reported on his 1987 tax return. During 1987, petitioner deposited $331,575 into the Business Account. Petitioner reported gross receipts of $314,424 on his 1987 Schedule C.

1988 Deposits

Respondent determined that during 1988 petitioner made withdrawals totaling $749,227 by and for the benefit of himself from Trust Account 1 and Trust Account 2. Respondent also determined that petitioner redeposited $185,992 of these withdrawals back into Trust Accounts 1 and 2 during 1988.

During 1988, $367,895 was deposited into the Business Account.  Of this amount, $202,266 represented transfers from Trust Account 1 and Trust Account 2.  Petitioner reported gross receipts of $327,852 on his 1988 Schedule C.

1989 Deposits

Respondent determined that during 1989 petitioner made withdrawals from Trust Account 1 and Trust Account 2 totaling $269,191.  Respondent also determined that during 1989, $190,860 of these withdrawals was redeposited into Trust Account 1 and Trust Account 2.

During 1989, $505,464 was deposited into the Business Account.  Petitioner reported gross receipts of $287,986 on his 1989 Schedule C.

1990 Deposits

During 1990, petitioner earned a fee of $100,000 for representing Marvin Barron in certain legal matters.  Of this amount, $6,504 was deposited into the Business Account.  Of the remaining $93,496, $12,000 was deposited in the McGee Landscaping Account, $40,000 was used to make a repayment on a loan owed by petitioner, and $41,496 was used to make a repayment on another loan owed by petitioner.

During 1990, $1,135,338 was deposited into the Business Account.  Petitioner reported gross receipts of $711,960 on his 1990 Schedule C.

During the years at issue, petitioner did not receive any inheritances, legacies, or devises.

## Interest Income

Petitioner sold property to Randy Weldon and Faust Daniels and took back a note and mortgage on the property. Respondent determined that petitioner received interest from the following sources during the years at issue.

|  | 1987 | 1988 | 1989 | 1990 |
|---|---|---|---|---|
| Faust Daniels | $1,724 | $5,165 | $5,151 | $5,134 |
| Randy Weldon | 5,188 | 5,179 | 5,170 | 5,159 |
| Bill Doufexius | 1,703 | | | |
| Total | 8,615 | 10,344 | 10,321 | 10,293 |

Petitioner reported interest income of $5,247, $5,195, $5,136, and $10,072 on his 1987, 1988, 1989, and 1990 tax returns.

## Sale of Property

### Trucks

In 1988, petitioner purchased 50 trucks used to haul and spread salt. Twenty-five of the trucks were used to haul salt and had dump beds. The remaining 25 trucks were spreader trucks that were used to spread salt on the roads. The trucks that contained dump beds cost $3,500 more apiece than the unbedded trucks. Petitioner paid $411,984 for the trucks, and incurred fix-up costs of $28,775 in 1988 and $120,230 in 1989.

Petitioner sold some of the trucks during 1988, 1989, and 1990. Petitioner sold 12 trucks with dump beds in 1988 for $137,285. Petitioner's basis in the 12 trucks was $126,780. In

1989, petitioner sold 13 trucks for $187,661. Twelve of the thirteen trucks sold in 1989 had beds. Petitioner's basis in the 13 trucks sold in 1989 was $174,977. Petitioner's 1989 tax return, however, reflected the sale of only 9 trucks. In 1990, petitioner sold two unbedded trucks for $21,818. Petitioner's basis in the two trucks sold in 1990 was $20,458. Petitioner's 1990 tax return, however, did not report any truck sales. Respondent verified the unreported truck sales by personal contact with the parties who purchased the trucks.

### Sipsey Harbor

In 1986, petitioner purchased real property located on the Sipsey River in Winston County, Alabama (Sipsey Harbor). Sipsey Harbor consisted of 41 lots. On August 28, 1988, petitioner issued an undated warranty deed for Sipsey Harbor to Ann M. Burdick and Tarrie H. Hyche. Tarrie Hyche paid off his debt to petitioner in 1991.

Petitioner was the grantor on deeds to two Sipsey Harbor lots, which were recorded in the Winston County property records in 1989, and was the grantor on deeds to four Sipsey Harbor lots, which were recorded in 1990. On petitioner's financial statements dated July 27, 1989 and July 31, 1989, petitioner represented himself as the owner of 30 Sipsey Harbor lots worth $450,000.

On April 17, 1990, petitioner executed a real estate mortgage with respect to Sipsey Harbor, which covered all but six

of the Sipsey Harbor lots. Under the real estate mortgage, petitioner was indebted to First State Bank of DeKalb County for $150,000.

During 1989, petitioner received $30,000 from the sale of the two Sipsey Harbor lots. Petitioner's basis in the two Sipsey Harbor lots sold in 1989 was $6,394. During 1990, petitioner received $70,000 from the sale of the four Sipsey Harbor lots. Petitioner's basis in the four Sipsey Harbor lots sold in 1990 was $15,985. No information concerning Sipsey Harbor or any Sipsey Harbor lot is included on petitioner's 1987, 1988, 1989, or 1990 tax return.

Farming and Harness-Racing Activities

For each of the years at issue, petitioner claimed substantial losses relating to a farm whose principal product was grain. Petitioner and his family performed most of the labor at his farm. Petitioner himself did the planting and plowing. Each Schedule F, Profit or Loss From Farming, bearing petitioner's name and reflecting the periods from 1981 through 1990 claimed a net loss. The aggregate claimed net losses totaled $984,221. For 1982, 1983, 1984, 1985, 1986, and 1987, the claimed net losses from farming exceeded the net profit reported from petitioner's law practice.

In 1990, petitioner also claimed losses relating to harness racing. Petitioner claimed breeding fees, dues, stakes, harnesses, and entry fees as expenses.

Notices of Deficiency

Respondent determined petitioner's gross receipts from his law practice for the 1987, 1988, 1989, and 1990 tax years by using the bank deposits method and by adding various specific items. Specifically, respondent included (1) deposits to the Business Account; (2) certain withdrawals from Trust Account 1 and Trust Account 2; and (3) certain specific items of unreported income that were not deposited to the Business Account, Trust Account 1, or Trust Account 2. Respondent's analysis showed that, for each of the years, petitioner had substantial deposits in excess of the income that he reported on his return. Respondent issued notices of deficiency to petitioner with respect to his 1987, 1988, 1989, and 1990 tax years. In the notices of deficiency, respondent determined that petitioner had deficiencies in tax for the 1987, 1988, 1989, and 1990 tax years in the amounts of $334,292, $146,963, $39,772, and $224,046, respectively. Respondent also determined additions to tax or penalties for fraud, negligence, and failure to file.

                              OPINION

We note at the outset that petitioner did not file a post-trial brief in this case. Rule 151(a) provides, in part, that "Briefs shall be filed after trial or submission of a case, except as otherwise directed by the presiding Judge." This Court has long recognized the importance of filing a brief. See Klein

v. Commissioner, 6 B.T.A. 617 (1927); Stringer v. Commissioner, 84 T.C. 693 (1985), affd. 789 F.2d 917 (4th Cir. 1986).

The importance of a brief is underscored in a case such as the one currently before us where the contentions advanced by petitioner are ill-defined and his testimony is vague and largely unhelpful.  At the close of the trial, petitioner was specifically requested by the Court to include and explain in his opening brief each item that respondent used in reconstructing petitioner's income with which he disagreed.  Petitioner, however, failed to file a brief.[6]  When a party fails to file a brief altogether, such failure has been held by this Court to justify the dismissal of all issues as to which the nonfiling party has the burden of proof.  See Stringer v. Commissioner, supra.  While we are unwilling to enter a default judgment against petitioner in this case for failure to file a brief, we view his failure as an indication of petitioner's tenuous position with regard to the issues in question.

A.  Validity of Petitioner's Tax Returns

Section 6061 requires that an individual income tax return be signed "in accordance with forms or regulations prescribed by the Secretary."  In order for an agent to sign an individual income tax return for a taxpayer, it must be done in a manner authorized by U.S. Treasury Regulations.  See sec. 1.6061-1(a),

---

[6] As an experienced trial attorney, petitioner's failure to file a brief is especially egregious.

Income Tax Regs. A duly authorized agent may sign a return if the taxpayer is prevented from doing so by reason of disease or injury, continuous absence from the United States, or upon written request to the local Internal Revenue Service (IRS) District Director, if the District Director determines that good cause exists for permitting the agent to make the return. See sec. 1.6012-1(a)(5), Income Tax Regs.

In the present case, petitioner did not sign his 1987, 1988, or 1989 tax returns. Instead, Wilson, petitioner's employee, signed the returns. Wilson was not authorized by petitioner to sign the returns. Furthermore, even if she had been so authorized, none of the circumstances enumerated in sec. 1.6012-1(a)(5), Income Tax Regs., existed. Thus, she could not validly sign petitioner's individual income tax returns. Therefore, because the 1987, 1988, and 1989 returns were not signed by petitioner or an authorized agent pursuant to sec. 1.6061-1(a), Income Tax Regs., they do not constitute returns of petitioner.[7]

B. Jurisdiction To Determine an Increased Deficiency Under Section 6214(a)

Respondent treated petitioner's 1987, 1988, and 1989 tax returns as valid returns of petitioner at the time the notices of

---

[7] Although we have found that the 1987, 1988, and 1989 returns were not proper returns that would begin the period within which respondent could assess tax, nevertheless the returns are evidence of what petitioner represented to his return preparer. In that regard, petitioner stipulated these documents and did not object to their being part of the record. As such, the returns constitute admissions.

deficiency were issued. Accordingly, the 1987, 1988, and 1989 deficiencies were computed giving petitioner credit for reporting certain amounts of income. Evidence during trial, however, established that the documents were never signed by petitioner and were not valid returns. After determining that petitioner did not file returns in 1987, 1988, and 1989, however, respondent contends that petitioner's deficiencies for the 1987, 1988, and 1989 tax years are greater than those determined in the notices of deficiency due to petitioner's failure to file returns for those years. Thus, respondent seeks increased deficiencies and additions to tax in greater amounts than those set forth in the notices of deficiency.

Section 6214(a) provides that this Court shall have jurisdiction to redetermine the correct amount of the deficiency even if the amount so redetermined is greater than the amount determined by the Commissioner in the notice of deficiency if the Commissioner asserts a claim at or before the hearing or rehearing. Consistent with the general mandate of section 6214(a), this Court generally will only exercise its jurisdiction over an increased deficiency where the matter is properly pleaded. See Estate of Petschek v. Commissioner, 81 T.C. 260, 271-272 (1983), affd. 738 F.2d 67 (2d Cir. 1984); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975).

Rule 41(b)(1), however, provides that when an issue not raised in the pleadings is tried with the express or implied

consent of the parties, that issue is treated in all respects as if it had been raised in the pleadings.  Thus, where respondent raises an issue that could result in an increased deficiency without formally amending his pleading and that issue is tried with petitioner's express or implied consent, the requirement in section 6214(a) that respondent make a claim for the increased deficiency is satisfied.  See <u>Woods v. Commissioner</u>, 91 T.C. 88, 93 (1988).

In his trial memorandum, respondent asserted a claim for amounts greater than those stated in the notices of deficiency, based on his belief that petitioner did not sign his tax returns and therefore did not file valid returns.  A relatively large portion of petitioner's trial testimony addressed this issue.  Thus, petitioner was aware that respondent disagreed with petitioner's position regarding the validity of his tax returns.  Petitioner could have raised an objection to respondent's assertion either in his trial memorandum, during trial, or in his posttrial brief.  He did not, however, submit a trial memorandum or file a posttrial brief, and he did not raise any objection during trial.

Under the foregoing circumstances, we do not believe petitioner was either surprised or disadvantaged by respondent's claim that petitioner is liable for increased deficiencies.  Thus, we conclude that respondent has asserted a claim for an increased deficiency as required by section 6214(a).

C.  Unreported Schedule C Income

Every taxpayer is required to maintain adequate records of taxable income.  See sec. 6001.  When respondent audited petitioner's 1987, 1988, 1989, and 1990 income tax returns, petitioner failed to provide sufficient records from which a determination could be made of petitioner's gross receipts.  In the absence of adequate records, respondent performed a bank deposits analysis, under which he determined that petitioner had made deposits in excess of the reported gross receipts.

In cases where taxpayers have not maintained business records or where their business records are inadequate, the courts have authorized the Commissioner to reconstruct income by any method that, in the Commissioner's opinion, clearly reflects income.  See sec. 446(b); Parks v. Commissioner, 94 T.C. 654, 658 (1990).  The Commissioner's method need not be exact but must be reasonable.  See Holland v. United States, 348 U.S. 121 (1954).

The bank deposits method for computing unreported income has long been sanctioned by the courts.  See Factor v. Commissioner, 281 F.2d 100, 116 (9th Cir. 1960), affg. T.C. Memo. 1958-94; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  Bank deposits are prima facie evidence of income.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  Where the taxpayer has failed to maintain adequate records as to the amount and source of his or her income and the Commissioner has determined that the deposits are income, the taxpayer must

show that the determination is incorrect.  See Rule 142(a);

Welch v. Helvering, 290 U.S. 111, 115 (1933).

In calculating petitioner's income using the bank deposits method, respondent considered deposits to the Business Account and made a downward adjustment for any withdrawals from the Trust Accounts that were deposited to the Business Account in order to prevent duplication.[8]  Respondent's method of computing petitioner's law practice income insured that petitioner was not taxed on receipts that constituted loan proceeds or other nontaxable receipts by eliminating such deposits from the computation.  Respondent's method further insured that petitioner was not taxed twice on receipts that were properly reportable at places on petitioner's returns other than on the law practice Schedule C.

Petitioner admitted both in his pleadings and during trial that some income had been unreported.  In all of the tax years at issue, there were discrepancies between what was deposited into petitioner's Business Account and what was reported as gross receipts on petitioner's tax returns.  During 1987, 1988, 1989, and 1990, the amounts of gross deposits to the Business Account were $331,575, $367,895, $505,464, and $1,135,338, respectively.

---

[8] For example, in 1988 respondent made a $749,227 upward adjustment to petitioner's 1988 income for certain withdrawals from the Trust Accounts.  That adjustment, however, was offset by two downward adjustments:  One in the amount of $202,266 for interaccount transfers and one in the amount of $185,992 for repayments to the Trust Accounts.

The amounts of gross receipts reflected on the Schedules C attached to the 1987, 1988, 1989, and 1990 returns were $314,424, $327,852, $287,986, and $711,960, respectively.

In addition to these discrepancies, other items of income were not disclosed to petitioner's return preparer and were not reflected on any tax returns. First, during 1988, 1989, and 1990, certain withdrawals were made from Trust Accounts 1 and 2 that represented taxable income to petitioner. Second, during 1987 and 1990, certain fees earned by petitioner were not deposited into any of the accounts maintained by petitioner in connection with his law practice. During 1987 alone, the unreported specific items total $634,252, while petitioner reported only $314,424 of gross receipts.

Petitioner admits to receiving the unreported income, yet alleges that the 1987 unreported income items were subsequently deposited into the Business Account. Petitioner, however, presented no evidence supporting this allegation. In addition, these items that were allegedly deposited into petitioner's Business Account were never entered into the receipt books of petitioner's law practice. Furthermore, petitioner offered no credible evidence that any of the unexplained deposits were from a nontaxable source. In short, petitioner has not shown that respondent's income reconstruction is incorrect. Accordingly, respondent's determinations are sustained.

D.  Interest Income

Under section 61, interest income is includable in income. See sec. 61(a)(4).  Respondent determined that during 1987, 1988, 1989, and 1990, petitioner received interest income in amounts that exceeded what was reflected on his tax returns.  Petitioner admitted that he did not reflect interest income received from Faust Daniels for the 1988 and 1989 tax years.  Petitioner, however, alleged that some of the interest income that he failed to reflect was actually included in the gross receipts of his law practice.  Petitioner further alleged that his secretary inadvertently included the entire payment--principal and interest--as taxable income, and therefore his income was overstated.

As an initial matter, we note that petitioner has failed to present any evidence that interest income was actually reported on Schedule C.  If, however, interest income was reported on Schedule C, a separate adjustment for interest income could result in petitioner's being taxed twice on the same income.  Respondent's method of computing petitioner's correct Schedule C income, however, eliminated the possibility of such duplication by subtracting interest income from the computation of law practice income.  We further note that the only evidence that both principal and interest were included in taxable income is

petitioner's own testimony, which we find to be self-serving and unconvir

Accordingly, interest income in the amounts of $8,615, $10,344, $10,321, and $10,293 is includable in petitioner's income for the 1987, 1988, 1989, and 1990 tax years, respectively.

E.  Net Loss Deductions for Farming and Harness-Racing Activities

Section 183(a) provides that if a taxpayer's activity constitutes an activity not engaged in for profit, expenses arising out of the activity are allowed as deductions only as provided in section 183(b).  Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

The test for determining whether an individual is carrying on a trade or business under section 183 is whether the taxpayer's actual and honest objective in engaging in the activity is to make a profit.  See Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit.  The relevant factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3)

the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) the presence of elements of personal pleasure or recreation. Not all of these factors are applicable in every case, and no one factor is controlling. See sec. 1.183-2(b), Income Tax Regs. Although these factors are helpful in ascertaining a taxpayer's objective in engaging in the activity, no single factor, nor the existence of even a majority of the factors, is controlling. See Keanini v. Commissioner, 94 T.C. 41, 46 (1990). We now apply these factors to petitioner's farming and harness-racing activities.

Farming Activities

Petitioner did not present any evidence regarding the manner in which he operates his farm. He generally stated that he did the plowing and the planting, and that while he did have some help, he and his family did almost all of the labor in what he described as an "extensive farming operation that didn't turn out to be very profitable." He did not present any explicit evidence regarding how much time he spent on his farming activities,

though he did say that he was too busy with other activities to take care of the farm.

Each Schedule F from 1981 to 1990 reflected a net loss, totaling $984,221. While petitioner stated that he has always farmed and that "this wasn't a hobby farm like a lot of people", we have been unable to find any evidence establishing that petitioner engaged in the farming activities with the intention of making a profit.

During trial, petitioner alluded to the fact that the IRS wrote to him or Mr. Grierson, his return preparer, stating that $455,000 worth of Schedule F losses could be used for the first year that there was taxable income. Neither petitioner nor Mr. Grierson, however, was able to produce any document from the IRS regarding the availability of any Schedule F losses. Indeed, Mr. Grierson admitted that the conversation regarding the Schedule F losses may have been between himself and petitioner rather than between himself and the IRS.

Based on petitioner's testimony and the lack of any evidence regarding the manner in which he conducted his activity, we find that petitioner has not established that making a profit was his primary objective. Furthermore, petitioner has also failed to substantiate the claimed losses. Accordingly, we sustain respondent's determinations regarding petitioner's Schedule F net loss deductions for the 1987, 1988, 1989, and 1990 tax years.

Harness Racing

Petitioner's testimony regarding harness racing consisted of the following:

> This horse thing was a matter of--I wanted to grow colts.  I ended up having to pull * * * some horses-- these were harness horses too, by the way; they're not thoroughbreds.  They're like the old fairs that people used to have.  You might be familiar with the Ohio Fair, which has got the little brown jug, and all the farmers would have harness horses that pulled the carts to go.  That's the kind of horses that I had, and started out trying to have a brood mare band and of course, that didn't fare very well either. * * *

Other than this testimony, petitioner alluded to the death of a horse and some insurance payment.  However, in the absence of any explanation by petitioner elaborating on this, we are unable to determine what, if anything, this has to do with his harness-racing activities.  In short, petitioner failed to present any evidence that he engaged in the activity for profit. Furthermore, petitioner also failed to substantiate the claimed losses.  Accordingly, respondent's determinations with respect to petitioner's claimed "harness-racing" losses for 1990 are sustained.

F.  Capital Gain

Gains on the sale of property are taxable under section 61, and the gain is computed by reference to the excess of the amount realized over the adjusted basis provided in section 1011.  See sec. 1001.  We must determine whether petitioner reported the

correct amount of capital gain on the sale of Sipsey Harbor lots and the sale of trucks.

Sipsey Harbor

Petitioner contends that he sold Sipsey Harbor in one transaction, while respondent contends that the Sipsey Harbor lots were disposed of in several transactions.

Sipsey Harbor consisted of 41 lots. In 1988, petitioner issued an undated warranty deed for Sipsey Harbor to Ann Burdick and Tarrie Hyche. Yet on his financial statements dated July 27, 1989 and July 31, 1989, petitioner represented himself as the owner of 30 Sipsey Harbor lots worth $450,000. Thus, despite the warranty deed issued by petitioner to Tarrie Hyche in 1988, petitioner still considered himself the owner of 30 Sipsey Harbor lots in July 1989.

In 1989, petitioner was the grantor on deeds to two Sipsey Harbor lots, which were recorded in the Winston County property records. In 1990, petitioner was the grantor on deeds to four Sipsey Harbor lots, which were recorded in the Winston County property records. Thus, rather than disposing of Sipsey Harbor in one transaction, petitioner disposed of his interest in two Sipsey Harbor lots in 1989 and four Sipsey Harbor lots in 1990. No sales are reflected on petitioner's 1989 or 1990 return, nor is there any evidence to corroborate petitioner's alleged disposition of petitioner's entire interest in Sipsey Harbor.

Petitioner contends that the sale was not reported on any returns because it was an installment sale that was not completely paid off until 1991. We disagree with petitioner's characterization and treatment of the transaction. Petitioner produced no evidence that the sale of any Sipsey Harbor lot was structured as an installment sale. Petitioner failed to introduce any type of mortgage note between himself and Ann Burdick or Tarrie Hyche evidencing payments for the Sipsey Harbor lots. Petitioner failed to elaborate on the sale of the six lots in 1989 and 1990. Petitioner also failed to explain why no portion of any proceeds of the sales of those six lots or any other lots were reported on any of his returns. In short, petitioner offered no explanation for his complete failure to report any Sipsey Harbor transaction. Accordingly, we sustain respondent's determination with regard to petitioner's capital gain from the sale of Sipsey Harbor.

Trucks

Petitioner sold several trucks during the years in issue. Respondent verified the number of sales of petitioner's trucks by contacting the parties who purchased the trucks. Respondent determined that petitioner sold 13 trucks in 1989, but petitioner's 1989 return reflects the sale of only 9 trucks. Respondent determined that petitioner sold two trucks in 1990, but petitioner's 1990 return did not reflect any truck sales.

Petitioner failed to offer any explanation as to why he failed to report the sale of four trucks in 1989 and two trucks in 1990. Accordingly, we sustain respondent's determinations regarding petitioner's capital gains from the sale of trucks in 1989 and 1990.

G. McGee Landscaping

The resolution of whether petitioner is allowed to report the 1990 gains and losses of McGee Landscaping on his individual return depends on whether the corporate form of McGee Landscaping is respected for Federal income tax purposes. Generally, the gains and losses of a corporation which has not filed an election under section 1362 are not reportable on the shareholder's individual income tax return.

Petitioner must show that his landscaping business was not operated as a corporation. See Brints v. Commissioner, T.C. Memo. 1989-457. Courts have observed that taxpayers are free to organize their affairs as they choose, but that those tax consequences must be accepted regardless of whether their choice precluded the benefit of some other route that they might have chosen to follow but did not. See Commissioner v. National Alfalfa Dehydrating & Milling Co., 417 U.S. 134 (1974).

McGee Landscaping was incorporated in DeKalb County, Alabama, in 1986. During the years at issue, petitioner was the sole owner of McGee Landscaping. Petitioner chose to conduct the

business in a corporate form and chose not to file an election for S corporation treatment under section 1362. McGee Landscaping was held out as a corporation, and petitioner presented no evidence that McGee Landscaping was, in fact, petitioner's alter ego.

While a taxpayer may challenge the form of a transaction if necessary to avoid unjust results, we can find no injustice in characterizing McGee Landscaping as a corporation and not as a sole proprietorship or passthrough entity. See Spector v. Commissioner, 641 F.2d 376 (5th Cir. 1981), revg. 71 T.C. 1017 (1979). Indeed, the Supreme Court has established a general rule that the separate existence of a corporation is to be respected for tax purposes. See Moline Properties v. Commissioner, 319 U.S. 436 (1943).

Petitioner was free to run McGee Landscaping as he saw fit and chose to operate it as a separate corporate entity. Petitioner simply cannot retrospectively disavow the form in which he chose to operate his landscaping business in order to obtain certain tax benefits. Petitioner has failed to present any evidence indicating that McGee Landscaping did not possess a separate existence. Accordingly, we decline to disregard the corporate form of McGee Landscaping. Therefore, the gains and losses of McGee Landscaping are not reportable on petitioner's individual income tax return.

H.  Additions to Tax and Penalties

    Failure To File

    Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, not to exceed 25 percent.

    To avoid the additions to tax for filing late returns, a taxpayer must show (1) that the failure to file did not result from willful neglect, and (2) that the failure to file was due to reasonable cause.  See United States v. Boyle, 469 U.S. 241, 245 (1985).  If the taxpayer does not meet his burden, the imposition of the addition to tax is mandatory.  See Heman v. Commissioner, 32 T.C. 479 (1959), affd. 283 F.2d 227 (8th Cir. 1960).

    Petitioner failed to file returns for 1987 and 1988, and petitioner's 1990 return was filed more than 4 months late, which would result in the imposition of the maximum 25-percent rate for 1987, 1988, and 1990.  Petitioner stated that Mr. Perry handled the bank records and checks associated with his law practice but that Mr. Perry's office burned down, and he died in either 1988 or 1989.  Therefore, petitioner claims he had trouble reconstructing the records.  Petitioner, however, failed to present any evidence that a fire destroyed petitioner's records, preventing him from filing returns.  Accordingly, we view petitioner's testimony as self-serving and unconvincing and find

that petitioner has not presented evidence that he had a reasonable cause for not filing his 1987, 1988, and 1990 returns. Furthermore, petitioner has not shown that his failure to file was not due to willful neglect. Accordingly, we sustain respondent's determination with respect to the section 6651(a) additions to tax.[9]

Fraud

Respondent determined that petitioner is liable for additions to tax for fraud under sections 6653(b), 6651(f), and 6663. Respondent seeks to apply (1) the section 6653(b)(1)(A) and (B) additions to the 1987 adjustment for unreported gross receipts; (2) the section 6653(b)(1) addition to the 1988 adjustments for unreported gross receipts, unreported capital gains and unreported interest income; (3) the section 6651(f) addition for the 1989 fraudulent failure to file an income tax return;[10] and (4) the section 6663 addition for the 1990 adjustments for unreported gross receipts, unreported capital gains, and unreported interest income.

---

[9] Respondent concedes that no addition to tax under sec. 6651 for the 1987 and 1988 tax years will be assessed with respect to the portion of the underpayment that is attributable to fraud. See sec. 6653(d).

[10] Under sec. 6664(b), the civil fraud penalty of sec. 6663 determined in the notice of deficiency does not apply because petitioner did not file a 1989 return. Rather, the fraud delinquency penalty of sec. 6651(f) applies.

For 1987, section 6653(b)(1)(A) imposes an addition to tax if any part of an underpayment of tax required to be shown on a return is due to fraud, in the amount of 75 percent of the portion of the underpayment which is attributable to fraud. Section 6653(b)(1)(B) imposes an addition to the tax in the amount of 50 percent of the interest due with respect to the portion of the underpayment which is attributable to fraud. Section 6663(a), as applicable for 1990, provides that if any part of an underpayment is due to fraud there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud. Section 6651(f), as applicable for 1989, imposes an addition to the tax for the fraudulent failure to file an income tax return. The addition to the tax is 15 percent initially and an additional 15 percent for each portion of a month thereafter, up to a maximum of 75 percent. To determine whether petitioner's failure to file his return was fraudulent, we apply the same elements used when considering the imposition of the addition to tax and the penalty for fraud under section 6653(b)(1) and section 6663(a). See Clayton v. Commissioner, 102 T.C. 632, 653 (1994).

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. See Edelson v. Commissioner, 829 F.2d 828, 833 (9th Cir. 1987), affg. T.C. Memo. 1986-223. Respondent bears the burden of proving fraud and must establish

it by clear and convincing evidence.  See Rule 142(b).  Thus, we do not bootstrap a finding of fraud upon a taxpayer's failure to disprove the Commissioner's deficiency determination.  See Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

In order to satisfy this burden, respondent must show (1) that an underpayment exists, and (2) that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes.  See id.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  See DiLeo v. Commissioner, 96 T.C. 858, 874 (1991).  Fraud is never presumed and must be established by independent evidence of fraudulent intent.  See Edelson v. Commissioner, supra.  Fraud may be shown by circumstantial evidence because direct evidence of the taxpayer's fraudulent intent is seldom available.  See Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).  The taxpayer's entire course of conduct may establish the requisite fraudulent intent. See Stone v. Commissioner, 56 T.C. 213, 224 (1971).

To decide whether the fraud penalty is applicable, courts consider several indicia of fraud, or "badges of fraud", which include: (1) Understatement of income; (2) inadequate books and records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets;

(6) failure to cooperate with tax authorities; (7) filing false Forms W-4; (8) failure to make estimated payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity. See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). This list is nonexclusive. See Miller v. Commissioner, 94 T.C. 316, 334 (1990).

With regard to whether respondent has shown that an understatement exists, petitioner himself admitted that certain items of income were not reported on his tax returns. In addition, clear and convincing evidence establishes that petitioner underreported his gross receipts, interest income, and capital gains. Accordingly, we find that respondent has met his burden of proving an underpayment by clear and convincing evidence.

In this case, petitioner has willfully failed to file timely tax returns for the 1987, 1988, 1989, and 1990 taxable years. At the time the audit commenced in late 1990, petitioner had not filed returns for the 1981, 1982, 1983, 1984, 1985, 1987, 1988, or 1989 tax years. This is persuasive evidence of fraud. See Marsellus v. Commissioner, 544 F.2d 883 (5th Cir. 1977), affg. T.C. Memo. 1975-368.

Petitioner was fully aware of his obligation to file tax returns. His only apparent explanation for his delinquency in filing returns for the years at issue is that he believed that his Schedule F losses would completely offset his taxable income for all of those years. This explanation lacks credibility.

Petitioner, although currently unlicensed,[11] is an experienced attorney who studied Federal income taxation in law school. We find it totally unbelievable that an experienced attorney such as petitioner who was engaged in several businesses (law practice, McGee Landscaping, etc.) did not know of his legal duty to file accurate and timely returns. The fact that petitioner filed only one timely return during the 1980's establishes a long pattern of substantial and consistent underreporting of income.

Petitioner also actively concealed his income by routing several unusually large fees around his receipt books and business bank accounts. He also failed to deposit many items into any account, business or personal. Petitioner contends that the omissions were accidental and that there was no fraudulent intent involved. We would be more apt to believe petitioner if the omissions had a random quality to them. However, this is simply not the case. The fees that petitioner failed to record in his business records or deposit in his Business Account were

---

[11] On Jan. 29, 1999, the Alabama Supreme Court suspended petitioner from the practice of law in the courts of Alabama for a period of 3 years.

in the amounts of $305,270, $50,000, $278,982, and $100,000.  We think it is unlikely that petitioner "accidentally" routed only his largest fees around his Business Account.  The sheer size of the omissions for all years supports a finding that the omissions were intentional rather than accidental.  The fact that petitioner deposited these checks into personal accounts or endorsed them over to family members made it difficult for respondent to trace the proceeds to petitioner and is indicative of an intent to evade taxes.  Petitioner's attempt to blame his office staff and former return preparer for these omissions of income is weak and implausible.

Furthermore, petitioner failed to provide any explanation for the underreporting of interest income and capital gains. With regard to petitioner's capital gains adjustment relating to the Sipsey Harbor transactions, the evidence supports the finding that six lots of Sipsey Harbor were sold in 1989 and 1990. Petitioner argued that he disposed of Sipsey Harbor in a single transaction and that he was reporting the sale under the installment method.  Petitioner, however, did not report the Sipsey Harbor transaction on any tax return.  Regardless of which accounting method petitioner chose to utilize regarding the transaction, petitioner offered no explanation for his complete failure to report any Sipsey Harbor transaction.  Petitioner also

neglected to explain why he failed to report interest income and the sale of trucks.

We agree with respondent that the failure to file a 1989 return and the underreporting of gross receipts, interest income, and/or capital gains in 1987, 1988, and 1990 is attributable to fraud. The record shows that petitioner engaged in a pattern of failing to file returns and underreporting income. Petitioner failed to keep adequate records and concealed income by routing large checks into personal accounts or endorsing them and giving them to family members. Petitioner, as an experienced attorney, possessed sufficient education and knowledge of his duty to file tax returns and report income. He provided implausible explanations and failed to present any credible evidence that the omissions of income were accidental.

Based on the foregoing, we hold that respondent has established by clear and convincing evidence that petitioner's underpayments due to the underreporting of gross receipts, interest income and capital gains for the 1987, 1988, and 1990 tax years, and his failure to file a return for 1989, are attributable to fraud with the intent to evade tax. Accordingly, respondent's determination that petitioner is liable for the additions to tax under section 6653(b)(1)(A) and (B) for the 1987 taxable year, section 6653(b)(1) for the 1988 taxable year,

section 6651(f) for the 1989 taxable year, and section 6663 for the 1990 taxable year is sustained.

Negligence

Respondent contends that the negligence addition to tax under section 6653(a) for the 1987 and 1988 taxable years and the negligence penalty under section 6662(a) for the 1990 taxable year apply to the portions of the deficiencies in tax that are not subject to the fraud addition to tax (namely, the Schedule F losses, the underreported interest income in 1987, and the Schedule C landscaping and harness-racing losses in 1990).[12] The portions of the deficiencies against which the negligence additions to tax and negligence penalty were determined relate primarily to unsubstantiated claimed Schedule C and Schedule F expenses.

Section 6653(a)(1)(A) and (a)(2), as applicable for 1987, imposes an addition to tax if any part of an underpayment of tax required to be shown on a return is due to negligence or disregard of rules or regulations in the amount of 5 percent of the portion of the underpayment which is not attributable to fraud. Section 6653(a)(1)(B) imposes an addition to the tax in the amount of 50 percent of the interest due with respect to the portion of the underpayment which is attributable to negligence

_____

[12] Under sec. 6664(b), the negligence penalty determined in the notice of deficiency does not apply for 1989 because petitioner did not file a 1989 tax return.

and not attributable to fraud. Section 6662(a) and (b)(1), as applicable for 1990, imposes a penalty of 20 percent on the portion of an underpayment of tax required to be shown on a return which is attributable to negligence or disregard of rules or regulations.

Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985). The negligence addition to tax and the negligence penalty will apply if, among other things, the taxpayer fails to maintain adequate books and records with regard to the items in question. See Crocker v. Commissioner, 92 T.C. 899, 917 (1989). Petitioner claimed Schedule F and Schedule C loss deductions with respect to activities which he could not establish he engaged in for profit. He also failed to produce records substantiating the expenses which allegedly produced the losses. Because of petitioner's failure to maintain such records, we conclude that petitioner is liable for the negligence additions to tax and negligence penalty relating to the above items.

I. Petitioner's Legal Arguments

Statute of Limitations

The notice of deficiency that relates to petitioner's 1988, 1989, and 1990 tax years was issued on February 7, 1997. The notice of deficiency that relates to petitioner's 1987 tax year

was issued on December 19, 1997.  As discussed above, petitioner failed to sign his tax returns and filed no valid returns for the 1987, 1988, or 1989 tax years.  In addition, we have found fraud for portions of the 1987 and 1988 deficiencies and all of the 1989 deficiency.  Therefore, under section 6501(c)(1) and (3), respondent was not barred by the statute of limitations from issuing the notices of deficiency with respect to those years. With respect to the 1990 tax year, petitioner's underpayments for that year were fraudulent, to the extent determined above. Accordingly, respondent was not barred by the statute of limitations with respect to the 1990 tax year under section 6501(c)(1).

Double Jeopardy, Res Judicata, and Collateral Estoppel

In his pleadings, petitioner argues that the determinations for each year are barred by double jeopardy, res judicata, and collateral estoppel.  We find petitioner's arguments to be wholly without merit.  Petitioner's acquittal on a criminal section 7206(1) charge does not preclude, under the doctrines of double jeopardy, res judicata, or collateral estoppel, respondent from litigating petitioner's civil liability for a deficiency in tax and additions to tax for failure to file, negligence, and fraud with respect to the same tax years.

There is a higher standard of proof in criminal proceedings (beyond a reasonable doubt) than there is in the civil proceeding

(preponderance of the evidence or clear and convincing evidence), so that failure of proof in the criminal proceeding does not necessarily lead to the conclusion that there will be a failure of proof herein.  See Kenney v. Commissioner, 111 F.2d 374 (5th Cir. 1940); Traficant v. Commissioner, 89 T.C. 501, 510-511 n.9 (1987), affd. 884 F.2d 258 (6th Cir. 1989).  Accordingly, the affirmative defenses of res judicata and collateral estoppel are unavailable to petitioner.  In addition, there is no double jeopardy in determining a civil addition to tax for fraud even though a person has been indicted and tried for tax evasion.  See Ianniello v. Commissioner, 98 T.C. 165, 183-185 (1992).

We have considered all other arguments of the parties, and to the extent not addressed herein we find them to be either moot, meritless, or irrelevant.

To reflect concessions of the parties,

Decisions will be entered

under Rule 155.